Mr. Justice Olin:
I fully concur with the views expressed by Mr. Justice Wylie as to the true interpretation of this patent law. The interpretation contended for would turn the head of the office into the tail.
It will be noticed that the law provides for the appointment of primary examiners upon the nomination of the Commissioner, but gives no appeal from their favorable action upon án application for a patent. Now, upon the principle contended for here by the relator, the decision of the primary examiner would be final, and would couclude and bind the Commissioner, whose nominee he is.
The relator’s counsel has dwelt upon the fact that the law does not expressly give the Commissioner the right of appeal from the decision of the examiners-in-chief, and has urged this as proof that such action is final. This does not seem to me to be the proper inference. I think the right of appeal was omitted because it was unnecessary to confer it; for the Commissioner’s supervisory power over acts of the subordinates in the office is such as to preclude any necessity of his “ appealing ” from the examiners-in-chief. He can refuse to grant the patent.
As to the remedy: Nothing is clearer than that where the law has pointed out a particular remedy the writ of mandamus does not lie. Moreover, the Commissioner does not issue the patent. It is signed by the Secretary of the Interior and countersigned by the Commissioner. The former really controls the issuing.
I had intended to write out an opinion, but in the feeble *109 state of my health I have not completed it. In fact, I found I was going further in the statement of principles governing the case than my brethren might feel inclined to follow me.
Mr. Justice MacArthur:
I suppose the officers in charge of the Patent-Office desire to ascertain the grounds on which the mandamus was refused, so as to regulate their future actions in matters affected by the decision.
The views of the minority will not be of much importance in this respect, as the judgment of the court and not the dissenting opinions will determine the course to be followed hereafter. On a subject of so much consequence, however, I desire to state some of the reasons for the dissent which I indicated one week ago, and I am authorized by the chief-justice to say that he agrees with me in opinion.
I will premise by observing that the Patent-Office has become a conspicuous feature in our Government. This branch of business had accumulated so enormously, that in 1870 Congress revised and reduced the whole system to order by the law of that year. The officers were classified, and their duties, to some extent, defined, so that the work might go on efficiently and harmoniously. In conformity with this idea the second section provides for three examiners-in-chief to be appointed by the President, by and with the consent of the Senate, and their duties are prescribed in the tenth section, which reads as follows :
“ That the examiners-in-chief shall be persons of competent legal knowledge and scientific ability, whose duty it shall be, on the written petition of the appellant, to revise and determine upon the validity of the adverse decisions of examiners upon applications for patents, and for re-issues of patents, and in interference cases; and, when required by the Commissioner, shall hear and report upon claims for extensions, and perform such other like duties as he may assign them.”
The forty-sixth section enacts—
“That every applicant for a patent, or the re-issue of a patent, any of the claims of which have been twice rejected, and every party to an interference, may appeal from the decis *110 ion of the primary examiner, or of the examiner in charge of interferences, in such case, to the board of examiners-in-chief, having once paid the fee for such appeal provided by law.”
The sections following this provide for an appeal where the party is dissatisfied with the decisions of the examiners-in-chief to the Commissioner in person, and then for an appeal to the supreme court of this District from the decision of the Commissioner, if it is adverse to the applicant. Here we have a system judicial in form and substance for the express purpose of deciding upon the rights of applicants for patents, and there is nowhere throughout the entire law any power given to the Commissioner to set aside or disregard the rights of an applicant thus settled and pronounced, except in the cases which come to him by way of appeal from the adverse decisions of the board. It appears to have been the design of Congress to furnish in the Patent-Office itself a judicial method of determining when a patent ought to issue, giving to the Commissioner only an appellate power of revision, and it is simply in these cases that he is to exercise the right of refusing a patent. The examiners-in-chief are to be selected with reference to their fitness to perform the special duties assigned them. The law directs that they shall be persons of competent legal knowledge and scientific ability, and, therefore, specially qualified to pass upon the legal and scientific questions that are in most cases involved in deciding upon the validity of a claim for a patent. No such requirement is made in selecting the Commissioner. His position is undoubtedly one of high trust and great responsibility; but he is appointed on account of his general character and administrative capacity. The special duty of deciding upon the propriety of a patent is, therefore, confided to the examiners designated by the law for that purpose, and no appeal is given except upon an adverse decision. In no other case and in no other way does the law provide for a revision of their action. If their decison is favorable to the inventor, there is no authority given the Commissioner to defeat his rights by suspending the proceedings, or refusing to prepare and countersign the patent. On the contrary, the thirty-first section expressly makes it his duty, if upon the examination it shall appear that the claimant is justly entitled to a patent, *111 “ the Commisioner shall issue a patent therefor.” The law is mandatory upon him in case the applicant procures a favorable decision, and he cannot evade it without dispensing with the law itself. He ,has no right to take up cases except by appeal, overrule decisions, suspend proceedings, and refuse patents at his own will and pleasure. Congress never designed to confer a power so dangerous to the hands of any Commissioner, and one so inimical to the interests of inventors. They have provided how the merits of an application for a patent are to be examined and determined, and the result is called a “ decision.” The case is heard before the examiners upon testimony and argument. The inventor is heard by himself or counsel, and a decision is then made in his favor upon the merits of his application. Is it possible that where there is no regular appeal given, and without notice, or any of the forms prescribed by the law, the Commissioner can take this case up on his own arbitrary motion, and defeat or reverse the whole proceedings? We are not at liberty to infer that Congress intended an act so inconsistent with the judicial system they have ordained in tie law of 1870.
Where any new fact is developed, raising new grounds of objection, or where fraud is discovered, or where any gross irregularity appears, then it is competent, no doubt, for the Commissioner, by virtue of his supervisory power, to direct a re-examination of the case. In this very case there was a re-examination by order of the Commissioner, and the board affirmed their previous decision in favor of Hull. But when a case has been regularly presented and duly examined, and decided favorably to the applicant on its merits, it is the duty of the Commissioner to prepare the patent, and the law, as we have seen, expressly makes it mandatory upon him in all cases.
It has been suggested that the remedy of the relator is under the 52d section, which provides “ that whenever a patent is refused for any reason whatever, either by the Commissioner or by the supreme court of the District of Columbia upon appeal from the Commissioner, the applicant may have remedy by bill in equity; aud that, therefore, mandamus will not lie in this case, as the applicant has a remedy. But *112 it is to be noticed that this proceeding in equity is given only in case the Commissioner refuses to issue the patent. It is clear to my mind that the refusal of the Commissioner can only occur in cases which regularly come before him on an appeal from an adverse decision of the examiners-in-chief. These are the only cases he can examine and decide, and it is not until his refusal to issue the patent in a case upon such an appeal that the remedy prescribed by the 52d section can be invoked. We have seen that, by the 31st section, it is the duty of the Commissioner, where an application is filed, to cause an examination to be made, and if such examination shows that the applicant is entitled to a patent, the Commissioner shall issue one to him. He can refuse to issue a patent when he himself makes the examination, and this he can only do upon an appeal regularly taken from the action of the board. It is only an adverse decision that can be reviewed by a bill in equity, while here the last regular decision was in favor of Hull. The Commissioner clearly understood that he could not absolutely refuse to issue a patent, for on the 14th of April, 1870, he simply placed a written order on file “ suspending further proceedings until his further order,” and no farther order has ever been made. The proceedings are still suspended, and the further order, when made, may or may not be a refusal. The contingency, therefore, upon which the remedy in equity depends has not occurred, and cannot be urged as an objection to the mandamus.
T,he Commissioner has, in fact, decided nothing and examined nothing respecting the merits of Hull’s application. In his return he sets forth certain circumstances in the history of the case that have no relation to the rights acquired by Hull in the favorable decision of the board. He has simply interdicted all further proceedings until he shall make a further order. It is impossible for Hull to resort to equity before this final action shall have taken place. If the Commissioner should make an adverse decision, the statute provides for an appeal to this court,- but in the present anomalous condition of the record I can see no remedy, unless it may be asserted in this form.
As to the objection that Hull is barred in this case by the delay of more than two years in prosecuting his application, *113 it is sufficient to say that the time limited in the 32d section does not begin to run until notice shall have been given of the action taken by the office, and no such notice of the order suspending the proceedings has been served in this case.
I have thus given my construction of the patent law of 1870, as far as the same is involved in this case, and I think the writ ought to issue in such form a,s will compel the Commissioner to perform the ministerial work necessary in issuing a patent.